And, uh, Mr. Osman, how would you pronounce, uh, proper pronunciation of your client's names here? Is it Umana? Uh, it's Mr. Walms. Oh, that's right, I got you on the top, yeah. But what's the, what's the, what's the problem? Umana. Umana, okay. Versus Arnold, let's leave it at that. Okay, and Mr. Osman, go ahead, Mr. Walms. I'm sorry? I thought you had something else that I missed. Oh. Okay. Uh, Mr. Osman, when you're ready, would you please proceed with argument? Yes, thank you. Your Honor, counsel, may it please the court. I represent Surgia Centro, LLC and Marion Surgery Center Limited in this case. Surgia Centro is an Illinois LLC that is general partner of Marion Surgery Center Limited, an Illinois limited partnership that owns and operates an ambulatory surgery treatment center licensed by the Illinois Health Facilities Planning Board and regulated by various state and federal statutes, rules, and regulations. It is located in Marion, Illinois. Plaintiffs are Illinois licensed physicians qualified to practice medicine in Illinois and for several years, in the case of Dr. Ahmad, over 18 years, have been on the staff of the Marion Surgery Center and are minority limited partners of Marion Surgery Center Limited. Plaintiffs filed suit against defendants on June 6, 2011, requesting that a preliminary injunction without notice be issued preventing the Director of Public Health from issuing a license to either Surgia Centro or Marion Surgery Center Limited. The case was filed without notice to me or my firm, even though plaintiffs knew this firm represented the defendants. Judge Moore refused to entertain the motion without notice and said it for hearing. After the hearing, Judge Moore denied the plaintiff's motion and dismissed the case for lack of jurisdiction. Plaintiffs did not appeal. Subsequent to Judge Moore's order, defendants became aware that false pleadings had been filed and brought an action for Rule 137 sanctions within the time allowed. Judge Moore, after the case was filed and briefed, Judge Moore on September 6, 2011, without a hearing, made a docket entry that states, and this is in court record 293 and 294, quote, the court having considered the motion for Rule 137 sanctions and being fully advised in the premises, hereby denies the motion. This appeal followed. This is a straightforward appeal of the denial of a Rule 137 motion for sanctions and nothing more. It does not involve corporate practice of medicine. It does not involve who has ownership and or control of the surgery center. It involves whether or not false pleadings were filed in the circuit court. The case law for the Fifth District involving Rule 137 sanctions is well settled. Contrary to plaintiff's statements in their brief, there is not in question that an individual, as well as an attorney, who signs a pleading or affidavit that contains false information is liable to Rule 137 sanctions. Plain reading the Rule 137, where it states in part, the signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper that, to the best of his knowledge, information, and belief, form of reasonable inquiry, is well grounded in fact, and is warranted by existing law, are a good-faith argument for the extension, modification, or reversal of existing law, and it is not interposed for delay or needless increase in the cost of litigation. There is no question that an individual, a party, as well as the attorney, are subject to Rule 137. The case law in the Fifth District basically follows the Third District from years ago that followed Rule 11 from the Seventh Circuit in the federal court. The sole issue before the court is should Judge Moore have denied the defendant's motion for Rule 137 sanctions without holding a hearing, and in the absence of a hearing, should Judge Moore's decision be given any deferential treatment in his view. As you will see from my brief, I have cited several district court opinions that, when read and analyzed, will show without a doubt that a trial judge ought to have a hearing and that Rule 137 requires the judge to set forth with particularity the reasons for his decision, whether it is far sanctions or denied sanctions. Opposing counsel has cited only one case on the issue, well, they did cite some cases on the corporate practices of medicine, cited only one case on the issue of Rule 137 sanctions, and that is Graham v. Hildebrand at 248 LAF 3rd, 742, which is a primary case that I relied upon for my position. As pointed out in my reply brief, it was cited out, we believe it was cited out of context. We agree that the decision to award sanctions is within the trial court's sound discretion and will not be reversed on appeal absent of use of discretion, but in the Graham case, the court went on to say, I'm going to quote just a little bit of it. The decision of the circuit court needs to clearly set forth the factual basis for the result reached in order to be accorded deferential treatment. The appellate court, in reviewing a decision on a motion for sanctions, should primarily be determining whether, one, the circuit court's decision was an informed one, two, the decision was based on valid reasons that fit the case, and three, that decision followed logically from the application of the reasons stated to the particular circumstances of the case. Secondarily, the appellate court should maintain some consistency of result, at least for certain situations which are common and for which a clear result follows from the spirit as well as the letter of the applicable rule or statute. Cites the quotations there for the Rule 11 that that is all based on. Concluded in that sentence, we're saying, for a court review to end its decision without the benefit of the trial court's explicit findings tends to establish too many ad hoc rules of law as to the correct result in any given case. In this case, talking about the Graham case, the circuit court undoubtedly had reasons for its decision. However, it failed to express those reasons. And in that, the court seems to be following a federal case that interprets the federal Rule 11? That's correct, Your Honor. That's the third district case that you'll see in the other fifth district cases follows and cites. This is the case that it all comes back to. And the Seventh Circuit was interpreting Rule 11, which our Rule 137 is based on. But you'll see in the cases that this, in fact, is the basis for the fifth district's voting. Does federal Rule 11 have the same paragraph that 137's got at the end? That on the last paragraph of 137, if you deny it, you don't have to. They don't say that specifically. No, they do not. They don't say it specifically. But does federal Rule 11 have a similar paragraph? It has similar language. But just on that point, Your Honor, the case law, if you read all the case laws, is very specific. It makes no difference whether they grant it or deny it. You still have to have specific reasons. Otherwise, how are you going to review it? Now, the engravement of plaintiff's complaint is contained in paragraph 6, 11, 12, 13, and 14 of their complaint. The complaint is C10 through 13 of the record. This is important, and I want to go over these. Paragraph 6 of the complaint. This is a verified complaint filed and verified by Dr. Ortiz. It was not verified by anyone else, any of the other plaintiffs. Verified by Dr. Ortiz. Dr. Ortiz filed an affidavit also. Paragraph 6 says that prior to the approval of the transfer of the ownership by Illinois Health Facilities Planning Board, Dr. George Ortiz was the chief of the medical staff at the Surgery Center of Southern Illinois. That is, is, and was at the time, false. That the Marion Surgery Center, I'm sorry, paragraph 11, that in addition, that the center is not now under the medical supervision of one or more physicians, was then and is now false, and Dr. Ortiz knew it. That prior to July 5, 2011, Dr. Ortiz was the chief of medical staff and may have been claiming to have been the medical supervisor. That was kind of false, and Dr. Ortiz knew it. Thirteen, that Dr. Ortiz had resigned that position because he does not believe it would be appropriate to place his license to practice medicine in jeopardy by cooperating with a non-licensed individual or entity to engage in the practice of medicine. That is false. Dr. Ortiz had resigned some months before. That Dr. Ortiz, in his capacity as prior chief of staff, and a member of the medical staff at the Ambulatory Surgery Treatment Center, knows that there is currently no medical supervision by one or more physicians as required by law. That is false, and he knew it at the time of his firing. Now, you go on to his affidavit, which is, C16 and 17 in the record, paragraphs 4, 5, 6, and 7 in his affidavit, mirrors the language in the complaints of the other complaints, basically saying that he was the medical staff director, that he resigned. All of that was false.  Well, there's an affidavit in the file from Linda Bakers, who has been the medical director of the Surgery Center since 1995. And in her affidavit, in paragraphs 6, 7, and 8, and her affidavit is on page C338, it's exhibit D to her affidavit, I mean, her affidavit is 338. Now, this is an affidavit, and he filed an affidavit. There certainly is questions of fact. Most important document, and the reason this case was brought, the only reason this case was brought, is because Dr. Ortiz, on August the 3rd, 2011, after the case was dismissed, wrote an apology letter to Linda Bakers. That's exhibit 4 on C338. And it says, Dear Linda, It was not until I got your letter that I realized what the letter I sent you said. He's talking about the letter that he sent, allegedly resigning on July the 5th of 2011 as the medical director. I do not know who redacted it, but I am guilty of signing a letter that I did not read. Indeed, I stepped down voluntarily as medical director in 2010, when Dr. Carroll became available. Keep in mind, now, he's telling her that he knew that. But his pleadings in his affidavit say, in paragraphs, in the complaint, it says, paragraph 6, that he was the chief of staff of the medical. His email says he knew he was. He had resigned eight months earlier. He knew that. Paragraph 11 says, He knew that Dr. Carroll had taken his place and was the medical supervisor. And, in fact, when you look through the affidavit of Linda Bakers, you will see his original resignation, where he says that Dr. Carroll was better qualified than him. It says, paragraph 11, that prior to July 5th, Dr. Ortiz was chief of the medical staff. He knew he wasn't. His email shows that. He didn't read the letter. Probably didn't read the complaint. Who knows? That's the smoking gun, Your Honors, if I've ever seen one in years of practice. I don't think there's any doubt that this Court should remand this case, should remand the case to Judge Moore so we can have a hearing to see whether Rule 137 of the Sanctions should lie against Dr. Ortiz and against Attorney Womack, the false plea. And we ask that you remand the case. Thank you. Thank you. Mr. Wanley? Thank you, Your Honor. We heard a lot of argument by the real party interest to the case. This is the other parties that are listed here are controlled entirely by Ron. And Ron is the real party that is here. The issue in this case was whether or not a license should be issued to a non-physician who he admitted at the hearing was, in fact, running, operating, controlling the operations. The Court decided the issue entirely, entirely on the issue of standing. The AG's office and Ms. Drossman both claimed that neither Ahmad nor Womack or any of the other parties had any interest, any standing to raise the issue. The case wasn't appealed because there is another case that followed soon after that appealing the administrative decision. And that case will be before you guys pretty soon as well. Again, the Court ruled against Ahmad et al. on the issue of standing. The issue here is 137. I'm not sure how Ms. Drossman gets my involvement in committing fraud. I've got an affidavit by a person who tells me He said, I'm not sure what more you can do except to inquire of your client about things that you would suspect that he would know. He didn't say anything to me in argument about that. There is nothing there to show that I did anything improper in this case. I talked to all of the parties involved in the case. I believed the pleadings that I filed were accurate. But he says much more than that about Ortiz. And the issue here is kind of a it's not all that, in my opinion, all that broad. The issue here is whether or not the trial judge abused his discretion. The statute does not require that he have a hearing or set forth the basis of his opinions when he denies a motion for sanction. And Ms. Drossman talked a lot about what all the cases say. There's not a single case, not a single case in Illinois that contradicts the specific language of the statute that requires that you have a hearing or that you put findings in your order when you deny a motion for sanction. He's basically reading Graham to require a hearing. I know, but if you read Graham, and I've read Graham, and I'm sure you have too, it doesn't apply. In Graham, the court granted sanctions and didn't put any reason to deny in there. There's not a single case that says you have to have a hearing if you deny the sanctions. Impose the... I'm sorry? It says that where a section is imposed. Yeah. Right, yeah. There's not a single case that holds differently than that. Cases where they impose sanctions and don't give a reason for it, don't have a hearing, they're being reversed. There's not a single case that I could find, and obviously Ron couldn't find either because it's not cited, where that language is applied to cases where sanctions were denied. And the case law, and I cited that in the brief as well, the case law requires that a motion like this must set forth what part of the attorney fees are a result of the fraudulent pleadings. Now, here, we kind of use the language kind of carelessly. There's definitely false pleadings and fraudulent pleadings. If I file false pleadings, unfortunately, all the time, I let the doctors do things, find out later that they didn't do that, but at the time, I filed fraudulent pleadings. It's true, I filed car crash cases on the wrong street, wrong location, and those are false, but they're not fraudulent. There is a distinction, I think, that should be applied in these cases to false pleadings of fact and false pleadings of law. I don't think Ortiz can be held responsible for the legal claims that I put in the motion, and I think that's what has been trying to be accomplished here. But if you look at the decision the court entered, and if I was wrong on one of the other facts, Judge Blier denied the TRO, not Moore, and Judge Moore denied the hearing and eventually voted against it on the merits on the issue of standing. But his decision was made entirely on the issue of standing. That's part of the record, what he put in his finding. There's not a single portion of Osmond's motion that says any of the work that he did was involved at all with anything other than standing. He doesn't break it down. He doesn't tell me we're close to it. So the trial judge has in front of him a motion filed after he's made this decision, a motion that's filed after he's made the decision granting the relief the defense sought on the issue of standing by the attorney general's office and Mr. Osmond. There's nothing in the petition that even addresses the amount of time, if any, spent on standing, so the motion by itself is defective. And on that basis, he denies the motion and doesn't have a hearing. That's within his discretion. And he did what he's allowed to do in his discretion. And we talked about Ortiz said something that was false. He knew it was false at the time. If you look, I don't want to get into too much of that, but if you look at what he said, for example, paragraph 6, I know with my personal knowledge there's no medical director licensed to practice medicine with the privilege to perform surgery. The person that Mr. Osmond is talking about, if we ever had a hearing on that, the issue would be is that person licensed to do surgery anywhere in Illinois? Which is what the statute requires. There's a lot of combination of facts and law here, all of which is irrelevant because the decision the court made was based on standing. And there's nothing anywhere in the pleadings. Before the court, at the time the motion was filed, when the judge decided this case, the 137 motion had been filed. When he denied the 137 motion, it had been filed. I never responded to it. I had nothing to do with the court's decision. The court did entirely on its own. At that time, he had to go to all of this information, including a defective motion. Now, is the trial court in violation of its discretionary power in denying a motion that's defective on its facts? It doesn't break down the hearing. The answer to that is clearly no. The case law holds that the motion has to be specific about that portion of the motion, that portion of the fees are based on responding to false claims or not false claims. Mr. Roth said, we know it's false, we know it's false. That's a great argument. But there's no finding before this court that Ortiz was found to have been that way. There was no hearing. And it's improper here to make the argument now that we know Ortiz was lying, we know it's false, without that hearing. Ortiz said prior to a specific date he was, and prior to that date he was, the head of the Osment Affidavit, was chief of staff, that he resigned after that date. That's not a lie. Those things are true. And the issue in the case of whether or not these physicians who are on staff there, who had been on staff there, who had practiced there, had sent in the race, the issue. And the court said they didn't. In that case, like I said, that's going to be before you can say. Okay. Questions? Nope. Thank you. Any rebuttal? Yes, Your Honor. Mr. Osment, let me ask you, did this affidavit have anything to do with the dismissal of the case on jurisdictional grounds? Absolutely not, Your Honor, nor does it need to be. But if the trial judge sat there and thought, I didn't look at this, I didn't consider this affidavit in deciding this case, and looked through your motion and looked through your memorandum, why doesn't he have the discretion to proceed? Assuming everything you've got in your pleading is correct. Well, the reason, Your Honor, is that what you would then do is license everybody to lie under oath, license everyone to file false pleadings, and gamble. Okay? So now the judge didn't rely especially on this, or maybe he only relied a little bit on this, but what you will open the door for. How would he rely on it a little bit? We don't know. That's the point. Okay. Well, he couldn't. He couldn't. It's jurisdiction. He didn't consider it nothing. If it's no jurisdiction, he doesn't get anywhere. Stouts at the door. That is correct, Your Honor. Yep. What you will do, if that is this court's decision, what you will do is send a green light to attorneys and litigants that it is okay to file false pleadings and what you're adding is a new element in Graham, a new element in Rule 11 as described by the Seventh Circuit, that now is saying and what you would be saying is that the false statement must be material. There is no such requirement anywhere in any 137 motion or any case. So a sanction has to be imposed every time there is what the court interprets as a false plea. No discretion. No. You must impose a sanction. The judge absolutely has discretion, but he has to have a hearing, Your Honor. I'm not saying I don't know exactly all of the things that are going on. I want a hearing that I should have had so I can put Dr. Ortiz on the stand and asking these questions. The judge can hear it. The judge can say, Mr. Osmond, you're full of beans. Motion denied. Then whenever I come up here and say the judge said I was full of beans, you can see what the beans are. You don't know what the beans are today because he didn't hold the hearing, and that's the issue. Now, on the court, I told you that this case was about Rule 137, and Mr. Wallington wants to tell you the first thing is that I'm the real party in interest. What he wants to tell you is I own Sujia Central, and that's great. It has no bearing. I don't give up my rights just because I own an LLC. Now, he talks about it as set forth what attorney's fees were related to it. That's the reason you have a hearing. The judge couldn't have looked at attorney's fees and said one thing. I didn't have a hearing on it. Now, when he says that Ortiz is not responsible for legal claims, I agree with that. I didn't cite you any paragraphs that there was any legal claims. All the paragraphs I cited were facts, facts that he put in his affidavit and facts that he put in the plea that were not true. And as I just had said, there is no requirement, and should not be, that the false statements be relied upon or influence the judge. John talked a little bit about fraud. I have never used the word fraud except to respond to Mr. Wallington, and forgive us. We've known one another since we were that tall, so we forgive your heads off. He stole my phone, and I was going to say I threw it up, and he didn't. He's always quick. He's always quicker than I am. He talked about the fact that there was fraud. I've never alleged fraud. I've alleged false pleadings. Fraud rises to a whole other level. I've never alleged fraud. I've never alleged fraud against Mr. Wallington. Now, the claim against Mr. Wallington is, quite frankly, he should have sat Dr. Ortiz down and talked to him a little bit more, and he would have found out these facts. I have no doubt that Mr. Wallington relied upon Dr. Ortiz's affidavit, or he relied upon an associate to put together, or he relied upon many of the other people that we used. But the truth of the matter is, this is one ten-minute conversation with his client, asking him specifically when he resigned, what he resigned for, for the fairer for all of us. That's the claim against Mr. Wallington. I didn't bring it up in my opening out of courtesy to Mr. Wallington. I wouldn't be talking about it now, except he raised an issue to this court. It talks about my defective motion. There's nothing defective about my 137 motion. I've set out the claim. I've set out, put the e-mail attached to the documents whenever we responded. So there's nothing defective about my 137 motion. The truth of the matter is, Judge Moore did not allow my client the opportunity to get in front of the tribunal to approve the 137 motion. And if the court allows this, then you're going to be flying in the face of the brand which says we should not have ad hoc rulings. Were you going to prove up anything that wasn't in your motion? Yes. What was that going to be? Well, Mr. Wallington will stand. Mr. Ortiz will stand. Isn't it simply what was in your motion that you were going to prove up? No. There's lots of other things that I can... The word contained within your motion, you were going to prove up other things that entitled you to sanctions? Yes. Once you file a motion for Rule 137 sanctions, it's like any other pleading, Your Honor. I can amend my pleadings in the middle of a hearing to conform to the proof. I am not. I mean, yes, you have to have a good base basis. I've amended my complaint in federal court after the judgment to conform to the proof. So, yes, I was and will hopefully be able to bring forth other information. Thank you. Okay. Thanks to both of you and for your briefs today, and we will get you in order as soon as we can. We're going to take a short break before we begin with the next case.